**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TONY LYLES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 CV 1406 |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| JOE GAMBINO, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendants' Motion for Judgment on the Pleadings [ECF No. 151] and Defendants' Motion for Summary Judgment [ECF No. 153]. For the reasons discussed below, the Court grants in part and denies in part Defendants' Motion for Judgment on the Pleadings. To the extent Defendants' arguments are not rendered moot by the Court's ruling on the Motion for Judgment on the Pleadings, the Court denies Defendants' Motion for Summary Judgment.

**I.**

**BACKGROUND**

Plaintiff Tony Lyles, a former pre-trial detainee in Cook County, Illinois, was held at the Cook County Jail from approximately February of 2013 until September of 2015. At four separate court appearances – on July 24, 2013, November 18, 2013, December 19, 2013, and October 16, 2014 – Plaintiff alleges Cook County correctional officers violated his constitutional rights.

**A.     July 24, 2013 Incident**

On July 24, 2013, Plaintiff alleges that Officer Michael Seropian used excessive force against him and that Sergeant Joe Gambino and Officer Fitzpatrick Allen were deliberately indifferent to

his medical needs. [Plaintiff's Third Amended Complaint, ECF No. 137 ¶¶ 30, 33].[1] According to

Plaintiff, after a court proceeding on July 24th, Officer Seropian yanked on his arm while he was

handcuffed and threw him against an elevator door, causing injuries to his left shoulder, back, wrist,

and neck. [ECF No. 137 ¶¶ 4-7]. After he was returned to the jail and placed in a holding cell,

Plaintiff alleges that he asked Sergeant Gambino and Officer Allen to take him to Cermak Health

Services but they refused. [ECF No. 137 ¶ 8].

The same day, on July 24, 2013, Plaintiff filed a separate grievance and non-grievance

request related to the incident. [DSOMF, ECF Nos. 155-4, 155-5]. The grievance was marked with

control number 2013x2879 and described an unnamed bailiff making contact with Plaintiff's left

shoulder, resulting in pain and injury. [ECF No. 155-4, p. 1-2]. On August 10, 2013, Plaintiff

received and signed for a response to grievance 2013x2879. [ECF Nos. 155-4, p. 4; Plaintiff's

Response to DSOMF, ECF No. 166 ¶ 14]. On August 14, 2013, the Cook County Department of

Corrections ("CCDOC") responded to Plaintiff's non-grievance request, which asked for the identity

of the bailiff in courtroom 307 and described Sergeant Gambino's and Officer Allen's conduct. [ECF

No. 155-5, p. 6; ECF No. 166 ¶ 20]. Eight days later, on August 22, 2013, Plaintiff was transferred

to Kankakee County Jail. [ECF No. 155-3 ¶ 16; PSOMF, ECF No. 167-1 ¶ 4]. CCDOC's response

---

[1] Defendants do not include any record citations in the fact summary at the beginning of their Motion
for Judgment on the Pleadings. [ECF No. 153]. Both parties include record citations in their Local
Rule 56.1 Statements submitted in connection with Defendants' Motion for Summary Judgment.
[ECF No. 153]. The Court has included citations to the record in this Background section of its
Memorandum Opinion and Order as a prelude to ruling on both Motions. The Court has drawn on
the parties' Local Rule 56.1 Statements, as well as the pleadings and other documents filed on the
court docket. As discussed more fully below, a motion under Federal Rule of Civil Procedure 12(c)
is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6). *Gill v. City of
Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). As such, among other things, the Court can rely on
the pleadings, documents referenced in the motion, and take judicial notice of matters of public
record. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997);
*see also, Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012).

identifying the bailiff involved as Deputy Sheriff Michael Seropian *10995 was sent to Plaintiff at Kankakee. [ECF No. 155-5, p. 6]. However, due to his transfer, Plaintiff was not able to sign for the response to his non-grievance request. [ECF No. 155-5, p. 6; ECF No. 166 ¶ 21].

On October 10, 2013, Plaintiff returned to Cook County Jail. [ECF No. 155-3 ¶ 17; ECF No. 167-1 ¶ 13]. At that time, according to CCDOC, he was afforded an additional fourteen days to appeal grievance 2013x2879 and re-submit his non-grievance request as a formal grievance. [ECF No. 155-3 ¶¶ 18, 22]. Plaintiff did not appeal grievance 2013x2879, nor did he re-submit his non-grievance request. [ECF No. 155-3 ¶¶ 18, 22; ECF No. 166 ¶ 15].

**B.      November 18, 2013 Incident**

On November 18, 2013, Plaintiff attended another court appearance where he alleges Officer Seropian used excessive force against him and Sergeant Gambino was deliberately indifferent to his medical needs. [ECF No. 137 ¶¶ 30, 33]. Specifically, Plaintiff alleges that Officer Seropian pushed him while leading him out of the courtroom and yanked on his handcuffs, reinjuring his shoulder, back, neck, and wrist. [ECF No. 137 ¶¶ 11-14]. He further alleges that Sergeant Gambino refused to take him to a doctor, despite his complaints of pain. [ECF No. 137 ¶¶ 15, 16]. There is no evidence Plaintiff submitted a grievance related to the November 18, 2013 incident. [ECF No. 166 ¶¶ 10, 11].[2]

**C.      December 19, 2013 Incident**

At a court appearance on December 19, 2013, Plaintiff alleges that Officer Seropian used excessive force by handcuffing Plaintiff tightly behind his back, causing pain to his wrists and shoulders. [ECF No. 137 ¶¶ 17, 18, 30]. Plaintiff further claims that Officer Edward Hopkins used excessive force by grabbing Plaintiff from behind and dragging him from the courtroom, causing

---

[2] The cited Statement of Material Facts does not establish conclusively that Plaintiff did not grieve the November 18, 2013 incident, but the undisputed fact remains there is no evidence in the record, and Plaintiff does not contend, that he did so.

pain and injury. [ECF No. 137 ¶¶ 19, 30]. According to Plaintiff, both officers failed to intervene to prevent the injury by the other. [ECF No. 137 ¶ 31]. There is no evidence Plaintiff submitted a grievance related to the December 19, 2013 incident. [ECF No. 166 ¶¶ 10, 11].[3]

### D.    October 16, 2014 Incident

On October 16, 2014, Plaintiff alleges that Officer Hopkins used excessive force in carrying out a judge's order to remove Plaintiff from a courtroom. [ECF No. 137 ¶¶ 21-27, 30]. Plaintiff asserts that as he was led out of the courtroom, Officer Hopkins twice forced him into a seat in the gallery, causing pain to Plaintiff's neck, back, and injured shoulder. [ECF No. 137 ¶¶ 25, 27]. Plaintiff filed a grievance that same day referencing excessive use of force by "Officer Higgins." [ECF No. 155-6]. The grievance was given control number 2014x6354 and processed as an emergency grievance. [ECF No. 155-6, p. 1, 4; ECF No. 166 ¶¶ 25, 26]. On October 23, 2014, Plaintiff received and signed for a response to that grievance, which indicated that the complaint had been directed to the Office of Professional Responsibility ("OPR") for review. [ECF No. 155-6, p. 1, 4; ECF No. 166 ¶¶ 25, 26; ECF No. 155-4, p.3-4]. Plaintiff did not appeal grievance 2014x6354. [ECF No. 155-4 ¶ 27; ECF No. 166 ¶ 27].

## II.

## PROCEDURAL HISTORY

On February 26, 2014, Plaintiff filed suit alleging improper use of force and deliberate indifference to his serious medical needs by "Tom Dart," "Sergent Gambine," "Officer Allen," and three unknown officers pursuant to 42 U.S.C. § 1983. [ECF No. 1]. Plaintiff was allowed to proceed

---

[3] The cited Statement of Material Facts likewise is inconclusive as to whether Plaintiff grieved the December 19, 2013 incident. There also is no evidence in the record, and Plaintiff does not argue, that he did so.

against Sheriff Tom Dart as a nominal defendant for the limited purpose of identifying the officers whose names he did not know. [ECF No. 5].

On July 20, 2015, Plaintiff filed his first amended complaint, which the Court struck for failure to comply with repeated court orders. [ECF Nos. 37, 43]. Plaintiff's second amended complaint, dated November 3, 2015, was accepted by the Court with some limitation. [ECF Nos. 49, 51, 52]. Pursuant to 28 U.S.C. § 1915A, the Court permitted Plaintiff to proceed with claims from incidents on July 24, 2013, November 18, 2013, December 19, 2013, and October 16, 2014. [ECF No. 51]. Specifically, the Plaintiff was allowed to proceed against "Officer Michael Seropian" for excessive use of force, failure to intervene, and deliberate indifference to his serious medical needs on July 24, 2013, excessive use of force and failure to intervene on November 18, 2013, and excessive use of force and failure to intervene on December 19, 2013. The Court further permitted Plaintiff to proceed with his claims against "Officer Fitzpatrick Allen" and "Sergeant Joe Gambino" for deliberate indifference to his serious medical needs on July 24, 2013. Finally, the Court allowed Plaintiff to proceed against "Officer Poe Higgins" for excessive use of force and failure to intervene on both December 19, 2013 and October 16, 2014. All claims against Tom Dart and "Unknown Officers" were dismissed. The court's order further cautioned Plaintiff that allowing the claims to proceed did not preclude Defendants from raising any applicable affirmative defenses, including the statute of limitations. [ECF No. 51, n.2].

Within a few months, Plaintiff filed a proposed complaint that the Court determined was substantially identical to the second amended complaint discussed above. It was therefore stricken. [ECF Nos. 53, 54]. On February 22, 2016, the Court dismissed "Officer Poe Higgins" from the suit without prejudice, as the summons served on the Cook County Sheriff's Office found no employee by the name of "Officer Poe Higgins." [ECF Nos. 62, 64]. On March 26, 2018, Plaintiff filed his

third amended complaint. [ECF No. 137]. It was accepted for the limited purpose of naming "Officer Edward Hopkins" in the place of "Officer Poe Higgins." [ECF No. 136]. On November 28, 2018, Defendants filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) [ECF No. 151] and a Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c) [ECF No. 153]. The Motions now are fully-briefed and the Court addresses each in turn.

## III.

## MOTION FOR JUDGMENT ON THE PLEADINGS

Officer Seropian and Officer Hopkins filed a Motion for Judgment on the Pleadings premised solely on statute of limitations grounds. Officer Seropian argues the July 24, 2013 and November 18, 2013 claims against him are time barred, and Officer Hopkins contends that the December 19, 2013 and October 16, 2014 allegations against him are similarly untimely.

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Gill,* 850 F.3d at 339. In considering the motion, the court must view all the facts in the light most favorable to the non-moving party and must take all uncontested allegations to which the parties had an opportunity to respond as true. *Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982); *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357 (7th Cir. 1987). The motion must be based "only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky,* 675 F.3d at 745; *see also, Northern Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449 (7th Cir. 1998); FED.R.CIV.P. 10(c) (written instrument that is exhibit to pleading is part of pleading for all purposes). Judicial notice includes matters of public record such as court documents,

as these are sources "whose accuracy cannot reasonably be questioned." *General Elec. Capital Corp.,* 128 F.3d at 1081 (collecting cases); FED.R.EVID. 201(b).

In order to grant a motion for judgment on the pleadings, it must be "beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (quoting *Thomas v. Guardsmark, Inc.,* 381 F.3d 701, 704 (7th Cir. 2004)). If the complaint "plainly reveals that [the] action is untimely under the governing statute of limitations," the court may dismiss it as time-barred. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). The statute of limitations in this case is two years under Illinois law, as applicable to all Section 1983 claims. *Reynolds v. Vill. of Evergreen Park*, 733 F. App'x 309, 310 (7th Cir. 2018); *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017); *Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998). Both parties are in accord. [ECF Nos. 151, p. 5; 161, p. 1].

### A.    Claims Involving Officer Seropian

Turning first to Officer Seropian, Plaintiff did not file his claims arising from the July 24, 2013 incident within the applicable statute of limitations. In order to adhere to the two-year limitation period, Plaintiff was required to bring his claims against Officer Seropian within two years of the July 24, 2013 incident, or before July 24, 2015. Plaintiff named Officer Seropian as a party to the suit for the first time on November 3, 2015, substituting him for the "Unknown Officer" he described in his initial complaint dated February 26, 2014. [ECF No. 49]. His claim arising from the July 24, 2013 incident therefore is untimely.

The November 18, 2013 claim involving Officer Seropian, however, was timely filed. Plaintiff was required to bring his claims against Officer Seropian prior to November 18, 2015, which he did. Plaintiff named Officer Seropian as a party to the suit on November 3, 2015, and

specifically pled Officer Seropian's involvement in the November 18, 2013 incident in his amended complaint. [ECF No. 49].

Having established that Plaintiff filed his claim arising from the July 24, 2013 incident against Officer Seropian beyond the applicable statutory period, the question becomes whether that claim relates back to the original complaint filed in February 2014 such that it was timely filed. The Court finds that it does not. Federal Rule of Civil Procedure 15(c)(3) permits an amendment to relate back to the original complaint "only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998). "Not knowing a defendant's name," as Plaintiff argues was the case with Officer Seropian, "is not a mistake under Rule 15." *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008); *see also, Gomez v. Randle,* 680 F.3d 859, 864 (7th Cir. 2012); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998). According to Plaintiff, he did not make a mistake as to Officer Seropian's identity, he simply did not know his name. *See, e.g., King v. One Unknown Federal Correctional Officer,* 201 F.3d 910 (7th Cir. 2010). Even naming an "Unnamed Officer" in Officer Seropian's place, essentially serving as a "John Doe," does not change the analysis or toll the limitations period. *Gomez,* 680 F.3d at 864 ("once the statute of limitations period expires, [a plaintiff] cannot amend his complaint to substitute a new party in the place of 'John Doe.'"). Accordingly, Plaintiff's July 24, 2013 claims against Officer Seropian do not relate back to the filing of Plaintiff's original complaint and therefore are time barred.

### B.     Claims Involving Officer Hopkins

The Court now turns to Officer Hopkins, who also was absent from Plaintiff's February 26, 2014 initial complaint. The statute of limitations required Plaintiff to sue Officer Hopkins prior to December 19, 2015 and October 16, 2016, respectively, based upon incidents that allegedly occurred

two years before those dates. Plaintiff failed to do so, as he did not name Officer Hopkins as a party to this suit until March 26, 2018. [ECF No. 137]. While Plaintiff's second amended complaint, dated November 3, 2015, timely named an "Officer Poe Higgins" as the responsible party in the December 19, 2013 and October 16, 2014 incidents, Officer Hopkins was, in fact, the officer involved. Plaintiff did not correct his mistake until his third amended complaint dated March 26, 2018, making both claims against Officer Hopkins untimely. [ECF No. 137].

When an amended complaint substitutes a new defendant on a claim that otherwise would be barred by the statute of limitations, the amendment will relate back under Rule 15(c)(1)(C) if the new defendant "'received such notice of the action that it will not be prejudiced in defending on the merits' and also 'knew or should have known that the action would have been brought against it.'" *Williams v. Williamson*, 2019 WL 1437900, at *4 (N.D. Ill. 2019) (quoting *Keller v. United States*, 444 F. App'x 909, 911 (7th Cir. 2011)). "'A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose—unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were.'" *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 560 (7th Cir. 2011) (quoting *Rendall–Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997)); *see also, Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010). When assessing relation back, the district court is only permitted to make two inquiries. *Joseph*, 638 F.3d at 559. First, whether the new defendant "knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant," and second, whether "the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." *Id.* at 559-60.

Plaintiff presents two arguments as to why the Court should find Officer Hopkins knew or should have known he would be sued: first, the existence of the October 16, 2014 grievance itself,

and second, because there was an OPR investigation into the incident. The record before the Court is sufficient to evaluate both of Plaintiff's arguments without a hearing. As to the first, knowledge of a grievance does not equate to knowledge of an imminent federal lawsuit. "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). Furthermore, the fact that Officer Higgins, not Officer Hopkins, was named in Plaintiff's initial grievance makes it even more unlikely that Officer Hopkins could have been put on notice of this action from the grievance itself.

As to Plaintiff's second argument, an officer's involvement in an OPR investigation – an internal, employment-related disciplinary process – does not put that officer on notice that a federal lawsuit will be brought against him. The two proceedings are different in both form and purpose, in the same way that "OPR investigations are distinct from the inmate grievance process," *Bowers v. Dart*, 2018 WL 835219, at *4 (N.D. Ill. 2018). "An internal-affairs investigation may lead to disciplinary proceedings targeting the wayward employee but ordinarily does not offer a remedy to the prisoner who was on the receiving end of the employee's malfeasance." *Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011). Under the first prong of the relation back inquiry, therefore, Plaintiff has not shown that Officer Hopkins was or should have been made aware of the lawsuit at any time prior to the filing of his third amended complaint, well after the statute of limitations had expired. In light of this conclusion, the Court need not move to the second stage of the inquiry under Rule 15(c)(1)(C) with respect to whether Officer Hopkins would have been prejudiced by Plaintiff's delay in adding him to this case. Plaintiff's claims against Officer Hopkins therefore are not timely and are barred by the statute of limitations.

**C. Equitable Tolling and Timeliness**

Plaintiff asks the Court to grant relief from the two-year statute of limitations period under equitable tolling principles. Equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before." *Fayoade v. Spratte*, 284 F. App'x 345, 347 (7th Cir. 2008) (quoting *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006)). That equitable doctrine is not, however, applicable in this case. Even taking the facts in the light most favorable to Plaintiff, the record does not demonstrate that Plaintiff, despite reasonable efforts, was unable to discover information essential to determining that he had a claim against either Officer Seropian or Officer Hopkins. *See, e.g., Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595–96 (7th Cir. 2001) (collecting cases).

The record also does not suggest Officer Seropian and Officer Hopkins took "certain active steps to prevent the plaintiff from suing," as is typical of equitable tolling cases. *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006). To the contrary, they suggest Plaintiff was aware of Officer Seropian's identity before the statute of limitations had expired. Documents in the record[4] indicate that Plaintiff identified Officer Seropian in a photo array on July 17, 2015 and CCDOC sent him a response to his non-grievance request identifying Officer Seropian in 2013. [Defendants' Motion to Clarify, ECF No. 41 ¶ 2; ECF No. 155-5, p. 6]; *see, e.g., Vodak v. City of Chicago*, 2006 WL 1049736 (N.D. Ill. 2006) (finding equitable estoppel, or equitable tolling, inapplicable where defendant provided arrest reports and other documents containing names of officers involved). On July 20,

---

[4] As discussed above, a Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Gill*, 850 F.3d 335. It is appropriate, therefore, to take judicial notice of matters of public record, including court documents. *General Elec. Capital Corp.*, 128 F.3d at 1081-82. As evidenced by citations to the parties' filings in this case, the Court's ruling on the Rule 12(c) motion is, in part, based on documents and exhibits either referenced by the parties' pleadings or contained within the court docket.

2015, within the statute of limitations period and a few days after identifying Officer Seropian in a photo array, Plaintiff filed an amended complaint describing a litany of constitutional violations by several individuals who did not become a part of this suit. [ECF No. 37]. He did not, however, include Officer Seropian in that amended complaint. [ECF No. 37]. And while the filing ultimately was stricken for failure to comply with court orders [ECF No. 43], it demonstrates that Plaintiff had the ability to name Officer Seropian within the statute of limitations period yet did not do so.

Plaintiff also urges the Court to deny Defendants' Motion as untimely. Plaintiff filed his third and final amended complaint on March 26, 2018 [ECF No. 137], which Defendants answered on April 17, 2018 [ECF No. 140]. About seven months later, on November 28, 2018, Defendants filed their Motion for Judgment on the Pleadings [ECF No. 151]. Plaintiff argues that Defendants are guilty of unreasonable delay in filing their Motion, yet cites no case authority for the proposition that a motion for judgment on the pleadings is untimely if filed seven months after the close of the pleadings. Nor has the Court's own research located such a case.

Federal Rule of Civil Procedure 12(c) allows any party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." FED.R.CIV.P. 12(c). The instant Motion was filed after the pleadings were closed and, given the particular facts of this case, the passage of time did not delay the trial, which has not yet been set. As Plaintiff concedes, this case has been pending for over five years with delay attributable to both Plaintiff and Defendants. Both sides sought extensions to discovery deadlines as well as numerous extensions to the summary judgment briefing schedule. [ECF Nos. 111, 116, 128, 148, 158, 163, 172, 174, 178, 179]. Further, even if not timely as a Rule 12(c) motion, the statute of limitations issues Defendants raise in their Motion could have been raised on summary judgment to the same

effect. Accordingly, while Defendants' Motion certainly was filed late in the gestation of this case, that alone is not a reason to deny it as untimely.

Plaintiff's final argument that the Court, in effect, ruled on the statute of limitations issue in Plaintiff's favor by allowing Plaintiff to amend his complaint to include Officers Seropian and Hopkins also is unavailing. As the Court said in 2015 in ruling on Plaintiff's proposed second amended complaint, "the statute of limitations is an affirmative defense," not a necessary element of Plaintiff's claim for relief. [ECF No. 51]; FED.R.CIV.P. 8(c). Therefore, allowing Plaintiff to proceed with his claims on initial review did not preclude Defendants from raising their affirmative defenses at the appropriate stage. Furthermore, the Court is cognizant of the fact that Plaintiff was, for a period, appearing *pro se*, including at the time he filed his second amended complaint. Allegations in a pro se complaint are held "to less stringent standards than formal pleadings drafted by lawyers," and are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Wilson v. Civil Town of Clayton, Ind.,* 839 F.2d 375, 378 (7th Cir. 1988). Mindful of the difficulties facing *pro se* litigants, the Court allowed Plaintiff to state any claims he could plead, regardless of possible affirmative defenses available to Defendant. *See, e.g., U.S. v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Now that the pleadings are complete and discovery is concluded, liberal pleading standards give way to the viability of Plaintiff's claims against Defendants on the merits.

For all the above reasons, Officer Seropian's Motion for Judgment on the Pleadings is granted with respect to the claim arising from the July 24, 2013 incident and denied with respect to the claim arising from the November 18, 2013 incident. Officer Hopkins' Motion for Judgment on the Pleadings as to both claims is granted.

## IV.

## MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment solely on the issue of Plaintiff's exhaustion of his administrative remedies. Officer Seropian argues that because Plaintiff failed to appeal his grievance regarding the July 24, 2013 incident, he has not exhausted his administrative remedies for that claim. Sergeant Gambino and Officer Allen also argue that because Plaintiff failed to re-submit his grieved issue from July 24, 2013 as a grievance request and subsequently appeal it, he has not exhausted his administrative remedies with respect to that claim. Finally, Officer Hopkins moves for summary judgment regarding the October 16, 2014 incident, arguing that Plaintiff failed to appeal his grievance related to the incident on that date and therefore did not exhaust. Considering the Court's ruling that the claim arising from the July 24, 2013 incident involving Officer Seropian and the claim arising from the October 16, 2014 incident involving Officer Hopkins are barred by the statute of limitations, the issue of exhaustion regarding these claims is moot. Therefore, only Sergeant Gambino's and Officer Allen's summary judgment arguments remain before the Court.

At the summary judgment stage, Sergeant Gambino and Officer Allen ask the Court to find, after viewing the facts and all reasonable inferences in the light most favorable to the Plaintiff, that there are no genuine issues of material fact in dispute and that Defendants are entitled to judgment as a matter of law on the issue of exhaustion. FED.R.CIV.P. 56(c). At summary judgment, the Court is assisted by Northern District of Illinois Local Rule 56.1, which requires Defendants, as the moving party, to provide "a statement of material facts as to which the moving party contends there is no genuine issue." N.D. Ill. L.R. 56.1(a)(3); *see Cracco v. Vitran, Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time

combing the record to locate the relevant information,' in determining whether a trial is necessary."
*Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). After Defendants file the Local Rule
56.1(a)(3) statement, the opposing party, Plaintiff, must file "a response to each numbered paragraph
in the moving party's statement, including, in the case of any disagreement, specific references to
the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R.
56.1(b)(3)(B); *Cracco,* 559 F.3d at 632. This is not a "mere formality," but rather, "follows from
the obligation imposed by Fed.R.Civ.P. 56(e) on the party opposing summary judgment to identify
specific facts that establish a genuine issue for trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d
918, 924 (7th Cir. 1994).

### A. Undisputed Material Facts

In compliance with Local Rule 56.1, Defendants filed a statement of uncontested material
facts supporting summary judgment. [DSOMF, ECF No. 155]. Plaintiff responded and also
exercised his right to present a separate statement of additional facts that require the denial of
summary judgment. [Plaintiff's Response to DSOMF, ECF No. 166; PSOMF, ECF No. 167]; *see,
e.g., Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 643 (7th Cir. 2008). The Court has reviewed the
relevant pleadings and finds no disputed issues of fact that require further inquiry at an exhaustion
hearing. *Pavey,* 544 F.3d at 742. The undisputed record regarding the sole summary judgment issue
remaining is as follows. Plaintiff filed a grievance naming Sergeant Gambino and Officer Allen on
July 24, 2013, the same day as the incident in question. [DSOMF ¶ 12, Ex. E; Plaintiff's Response
to DSOMF ¶ 12]. The grievance alleged that Plaintiff repeatedly complained of pain to Sergeant
Gambino and Officer Allen and asked to be transported to Cermak Hospital for treatment, which
they refused to do. [DSOMF, Ex. E]. In the grievance, Plaintiff also requested assistance from
CCDOC identifying the bailiff in the courtroom involved in the incident. [DSOMF, Ex. E].

CCDOC processed Plaintiff's above-described grieved issue as a non-grievance request. [DSOMF ¶¶ 12, 19, Ex. C, Ex. E; Plaintiff's Response to DSOMF ¶ 19]. A non-grievance request does not receive a control number, nor can it be appealed. [DSOMF, Ex. C ¶¶ 8, 9]. Instead, if the inmate is unsatisfied with CCDOC's response to a non-grievance request, it may be resubmitted as a grievance. [DSOMF, Ex. C ¶ 8, Ex. E]. CCDOC responded to Plaintiff's non-grievance request on August 14, 2013, identifying the courtroom bailiff as Deputy Sheriff Michael Seropian *10995. [DSOMF ¶ 20, Ex. E; Plaintiff's Response to DSOMF ¶ 20]. The response was directed to Plaintiff at Kankakee County Jail and, as a result of his transfer to Kankakee on August 14th, Plaintiff was unable to sign for it. [DSOMF ¶ 21; Plaintiff's Response to DSOMF ¶ 21]. Plaintiff did not resubmit the non-grievance request as a grievance. [DSOMF ¶ 23; PSOMF ¶ 12].

**B. Analysis**

Given the undisputed facts above, the Court turns to whether summary judgment is warranted. It is well-settled that "summary judgment cannot be used to resolve swearing contests between litigants." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (collecting cases). Rather, summary judgment is intended only to decipher whether, based on the evidence in the record, there "is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994).

Whether a fact is "material" necessarily depends on the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Defendants' argument concerning Plaintiff's exhaustion of his administrative remedies is governed by the Prison Litigation Reform Act of 1995 ("PLRA"), which provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner...until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court recently emphasized,

"that language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016) (citing *Woodford v. Ngo,* 548 U.S. 81, 85 (2006)). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

The PLRA does not provide for consideration of an individual prisoner's special circumstances, nor does it allow a court to consider whether exhaustion would be "unjust or inappropriate in a given case." *Ross*, 136 S. Ct. at 1858. "Exhaustion is no longer left to the discretion of the district court," *Woodford,* 548 U.S. at 85, but the PLRA does contain "its own, textual exception to mandatory exhaustion." *Ross,* 136 S. Ct. at 1858. An inmate only is required to exhaust "available," not unavailable, administrative remedies. The Supreme Court has repeatedly defined an "available" remedy as one which is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross,* 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 737-38 (2001)). In practice, a remedy is "available" where the prisoner has been notified of its existence in a way reasonably likely to be understood. *Ramirez v. Young,* 906 F. 3d 530 (7th Cir. 2018). It must also be available "in fact and not merely in form." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). Examples of unavailable remedies include an administrative procedure that "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," an administrative scheme that "no ordinary prisoner can discern or navigate," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross,* 136 S. Ct. at 1859-60.

It is clear, then, that unexhausted claims may not be brought in court. However, an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Failure to exhaust administrative remedies is an affirmative defense, and Defendants have the burden of showing that Plaintiff has failed to exhaust available administrative remedies. *Massey*, 196 F.3d at 735; *see also, Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

Applying these legal principles to the undisputed material facts in this case, Sergeant Gambino and Officer Allen are not entitled to summary judgment in their favor as Plaintiff's submission of his July 24, 2013 grievance exhausted all administrative remedies "available" to him at CCDOC. Inmates are "required to exhaust grievance procedures they have been told about, but not procedures they have not been told about." *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015). To that effect, inmates are "told" about the CCDOC grievance procedure through the Inmate Handbook and the grievance forms themselves. [PSOMF, Ex. B; DSOMF, Ex. D, E, F]. And while both sources describe the existence of a non-grievance request versus a grievance, neither explains the actual non-grievance request process, when CCDOC will designate an inmate complaint as one versus the other, and what an inmate must do to follow up on or appeal a non-grievance request. [PSOMF, Ex. B, p. 20-21; DSOMF, Ex. D, E, F]. Crucially, nothing in the record suggest that CCDOC inmates are on notice that the permissive language contained on the grievance form – "an inmate *may* re-submit the grievance issue" – is, in fact, mandatory for an inmate to exhaust his or her administrative remedies with respect to that issue. This is especially important where the decision to designate an inmate complaint as a non-grievance request versus a grievance does not belong to the inmate but, rather, to CCDOC through its Program Services staff. [DSOMF, Ex. D, E, F].

The plain language of Cook County Jail's stated policy did not *require* Plaintiff to resubmit his grievance after it was processed as a request. [DSOMF, Ex. D, E, F]. As a result, the exhaustion

process was completed when CCDOC responded to Plaintiff's grieved issue on August 14, 2013. Other courts within this district have been similarly reluctant to find exhaustion where an inmate has failed to resubmit a non-grievance request as a grievance under the Cook County Jail's procedural framework. *See, e.g., Coleman v. Dart,* 2019 WL 670248 (N.D. Ill. 2019) (holding that the Cook County Jail's designation of an inmate's grieved issue as a non-grievance request rendered the appellate process "unavailable" for purposes of exhaustion); *Evans v. Bilal,* 2017 WL 3278824 (N.D. Ill. 2017); *Camacho v. Dart,* 2017 WL 680329, at *5 (N.D. Ill. 2017); *Munoz v. Dawalibi,* 2015 WL 719373 (N.D. Ill 2015); *Harper v. Dart*, 2015 WL 3918944 (N.D. Ill. 2015); *Shelby v. Dart*, 2015 WL 8329971 (N.D. Ill. 2015). For these reasons, the Court finds that Sergeant Gambino and Officer Allen have not met their burden of showing that the procedures they argue Plaintiff failed to exhaust regarding the July 24, 2013 incident – resubmission of his non-grievance request as a grievance – were "available" to him.

### C. Final Matters

As a final matter regarding summary judgment, there are two procedural issues the Court must address. First, Defendants in their Motion for Summary Judgment exclusively argue the issue of exhaustion while "reserv[ing] the right at a later date to address Plaintiff's substantive claims" in a separate motion for summary judgment. [ECF No. 154, n.1]. On May 15, 2018, however, this Court entered a briefing schedule requiring Defendants to file their summary judgment motion by July 17, 2018. [ECF No. 143]. After the parties appeared at a status hearing on June 19, 2018, the Court extended the due date for summary judgment motions to August 21, 2018. [ECF No. 145]. At a status hearing a month later, on July 19, 2018, the Court once again extended Defendants' deadline to file their summary judgment motion to October 15, 2018. [ECF No. 146]. Three days before that

deadline, Defendants moved for another extension time [ECF No. 148], which the Court granted

[ECF No. 150]. However, in doing so, the Court cautioned Defendants as follows:

> "THIS IS THE FINAL EXTENSION OF TIME THE COURT WILL GRANT DEFENDANTS TO FILE ANY MOTIONS FOR SUMMARY JUDGMENT. The Court originally set a briefing schedule for summary judgment motions on 5/15/18 [143], fully five months ago. The Court then extended the date to file motions for summary judgment for 90 days on 7/19/18 [146] when Defendants' new counsel came into this case [147]. This is a 2014 case and further delay in filing any motions for summary judgment will not be permitted."

[ECF No. 150].

The plain language of the Court's order leaves no room for misinterpretation: Defendants

were required to file "*any* motions for summary judgment they intend to file" by the November 29,

2018 due date. [ECF No. 150] (emphasis added). Defendants were given over six months to file their

motions for summary judgment. The singular product of that extensive gestation period was the

summary judgment motion currently before this Court. Defendants apparently chose to raise some,

but perhaps not all, of the arguments they might raise in support of summary judgment in their long-

delayed filing. The Court is not inclined to give Defendants another bite at the apple. Therefore,

notwithstanding the footnote in Defendants' brief reserving the right to do so, Defendants will not

be permitted to file any other summary judgment motions, if that is, in fact, something they intend

to do by virtue of their "reservation of rights." [ECF No. 154, n.1]. "[D]istrict courts must manage a

burgeoning caseload, and they are under pressure to do so as efficiently and speedily as they can,

while still accomplishing just outcomes in every civil action." *Reales v. Consol. Rail Corp.*, 84 F.3d

993, 996 (7th Cir. 1996). Courts not only have, but must wield with "substantial discretion," the

power to establish and enforce deadlines for the filings of motions and to manage the discovery

process. *Id.* Given the Court's significant interest in maintaining the integrity of its calendar and the

interest of justice in moving this five-year old case to a conclusion, any further filings regarding

summary judgment will be considered untimely. *See, e.g., Wienco, Inc. v. Katahn Assocs., Inc.,* 965 F.2d 565, 568 (7th Cir. 1992).

Second, as the Court noted above, exhaustion of administrative remedies is an affirmative defense and, as such, the burden is on Defendants to raise it. Defendants asserted, and the Court addressed, exhaustion with respect to the July 24, 2013 and October 16, 2014 claims. Yet despite evidence in the record suggesting Plaintiff did not file any grievances or invoke the administrative process with respect to the November 18, 2013 and December 19, 2013 incidents [DSOMF ¶ 11, Ex. C; Plaintiff's Response to DSOMF ¶¶ 10, 11], Defendants did not assert the failure to exhaust as an affirmative defense regarding those claims. The "failure to plead an affirmative defense may result in a waiver of the defense if the defendant has relinquished it knowingly and intelligently, or forfeiture if the defendant merely failed to preserve the defense by pleading it." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019). Here, the Court finds *sua sponte* that Defendants have forfeited their right to raise exhaustion with respect to the November 18, 2013 and December 19, 2013 incidents by not pleading that affirmative defense in response to those two incidents.

## IV.

### CONCLUSION

The Court hereby grants in part and denies in part Defendants' Motion for Judgment on the Pleadings [ECF No. 151] and denies Defendants' Motion for Summary Judgment [ECF No. 153] for all the reasons discussed above. Plaintiff's remaining claims involving Sergeant Gambino's and Officer Allen's conduct on July 24, 2013, Officer Seropian's and Sergeant Gambino's conduct on November 18, 2013, and the incident involving Officer Seropian on December 19, 2013 will

proceed to trial unless the parties can resolve them before trial. This case is set for a status hearing on July 2, 2019 at 10:30 a.m.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:  June 17, 2019