IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY LYLES **Plaintiff,** v. SGT. GAMBINO, ET. AL. **Defendants.** | No. 14 C 1406 Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

On November 13, 2019, a jury returned a verdict in favor of Defendants and against Plaintiff in this case. [ECF No. 233]. Following the jury verdict, Defendants filed their Bill of Costs [ECF No. 236] for $2,575.43 in deposition and trial transcript fees. Plaintiff asks that the Court deny Defendants' Bill of Costs because he is indigent and therefore unable to pay the costs either now or in the future. [ECF No. 240]. For the reasons discussed below, Defendants' Bill of Costs [ECF No. 236] is granted in part and denied in part. To the extent Defendants' Bill of Costs is granted, the Court's order is stayed until June 8, 2021, which is six months after Plaintiff's projected parole date from the Illinois Department of Corrections.

### I. The Indigency Exception

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Although the Rule contains a presumption that the winning party is entitled to costs, the Court has some discretion to direct whether, and in what amount, costs may be assigned to a losing party. It is specifically "within the discretion of the district court to consider a

plaintiff's indigency in denying costs under Rule 54(d)." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006) (citing *Badillo v. Cent. Steel & Wire Co.,* 717 F.2d 1160, 1165 (7th Cir. 1983); *Mother & Father v. Cassidy,* 338 F.3d 704, 708 (7th Cir. 2003); *Reed v. Int'l Union,* 945 F.2d 198, 204 (7th Cir. 1991); *Congregation of Passion v. Touche, Ross & Co.,* 854 F.2d 219, 222 (7th Cir. 1988)). The indigence exception, however, is a narrow one. *Rivera,* 469 F.3d at 636. The losing party has a heavy burden to overcome the clear presumption outlined in Rule 54(d)(1) that costs are awarded to the prevailing party. *Mitchell v. City of Chicago,* 2014 WL 12878920, at *1 (N.D. Ill. 2014) ("only 'exceptional circumstances' warrant a complete denial of costs"); *McGill v. Faulkner,* 18 F.3d 456, 458 (7th Cir. 1994).

In evaluating whether a party asserting indigency should be held liable for costs, the Court must first determine if that individual is capable of paying the court-imposed costs at this time or in the future. *Rivera,* 469 F.3d at 635; *McGill*, 18 F.3d at 459. As the losing party, Plaintiff bears the burden of providing the Court with "substantial documentation of a true inability to pay," *Chapman v. AI Transp.,* 229 F.3d 1012, 1039 (11th Cir. 2000), not simply "unsupported, self-serving statements." *McGill*, 18 F.3d at 459. As the Seventh Circuit has explained:

> "[t]his documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses. Requiring a non-prevailing party to provide information about both income/assets and expenses will ensure that district courts have clear proof of the non-prevailing party's dire financial circumstances. Moreover, it will limit any incentive for litigants of modest means to portray themselves as indigent." *Rivera,* 469 F.3d at 635.

If the Court makes a threshold factual finding that Plaintiff is unable to pay court-imposed costs now and in the future, the Court must then consider "the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case when using its discretion to deny costs." *Id.* So long as the Court provides a sound basis or explanation for its decision to award or deny costs, its determination will be upheld. *Id.*

2

In support of his indigency claim, Plaintiff submitted two documents: an affidavit and a computer print-out of his inmate status in the Illinois Department of Corrections ("IDOC"). [ECF Nos. 240-1, 240-2]. The affidavit describes Plaintiff as having "no assets other than [his] IDOC commissary account," which Plaintiff assures the Court contains only a "nominal sum." [ECF No. 240-1] at ¶ 6. According to Plaintiff, prior to his incarceration, he sold "socks and sundry items as a street vendor" and has no other employment history. [ECF No. 240-1] at ¶ 3. He is 56 years old and does not believe he will be able to obtain employment after his release from IDOC due to his age, education, and status as a convicted felon. [ECF No. 240-1] at ¶¶ 1, 5. As for his liabilities, Plaintiff states that he has a child support judgment against him for $17,000. [ECF No. 240-1] at ¶ 4. Plaintiff's second document, a print-out from the IDOC website, indicates that Plaintiff has been incarcerated at IDOC since September 10, 2015 and has a projected parole date of December 8, 2020. [ECF No. 240-2] at 1. The document also alludes to the fact that Plaintiff was previously incarcerated in IDOC for drug-related and violent felony convictions. [ECF No. 240-2] at 3-4.

Plaintiff has produced some evidence that he is not capable of paying court-imposed costs at this time. He is incarcerated and is not gainfully employed. His averments concerning his current assets, the nature of his employment before he was incarcerated, and his obligation to pay child support, even if self-serving, are unrebutted. Plaintiff's prior application to proceed *in forma pauperis* provides further color in that it confirms Plaintiff has not been gainfully employed since he briefly worked as a custodian at a nursing home over twenty years ago. [ECF No. 3] at 1. Plaintiff's application to proceed *in forma pauperis* also provides a snapshot into Plaintiff's commissary account, which the Court notes had an average monthly deposit of $95.83 per month between July of 2013 and January of 2014. [ECF No. 3] at 5-8. There is no reason to believe this amount has increased in any significant way since 2013, given that Plaintiff has continuously been

3

incarcerated since that time. This evidence arguably is sufficient to establish Plaintiff currently is indigent, particularly when the Court considers that he has been incarcerated on and off for over thirty years during his adult life. *See, e.g, Barnes v. Sood,* 2019 WL 2330270, at *2 (C.D. Ill. 2019); [ECF No. 240-2]. Plaintiff's affidavit, supporting documentation, and application to proceed *in forma pauperis* therefore rise above a showing of "merely limited financial resources" and arguably demonstrate Plaintiff is unable to pay Defendants' costs at this time as a result of his indigency. *McCraven v. City of Chicago,* 2001 WL 62573, at *1 (N.D. Ill. 2001) (citing *Falcon v. City of Chicago,* 2000 WL 1231403, at *1 (N.D. Ill. 2000)).

Plaintiff's inability to pay Defendants' costs at this time, however, is only part of the inquiry. Even if the Court were to conclude that Plaintiff's current incarceration and history of unemployment render him incapable of paying Defendants' costs at this time, Plaintiff must demonstrate both that he is incapable of paying those costs at this time *and in the future. See, e.g., Rivera,* 469 F.3d at 635; *McGill*, 18 F.3d at 459. Plaintiff's affidavit falls short in this respect, as Plaintiff cites only his age and status as a convicted felon as reasons that he will be foreclosed from all meaningful employment prospects in the future. While the Court is certainly cognizant of the challenges a felony conviction presents to obtaining employment, the fact that Plaintiff is a convicted felon does not *per se* establish that he is categorically unemployable after he is released from prison. At least in the state of Illinois, of which Plaintiff appears to be a lifelong resident, employers are prohibited from asking prospective candidates about their criminal history. 775 ILCS 5/2-103 ("Unless otherwise authorized by law, it is a civil rights violation for any employer, employment agency or labor organization to inquire into or to use an arrest record, as defined under subsection (B-5) of Section 1-103, as a basis to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or

apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment."). The Seventh Circuit has also emphasized that a plaintiff's status as a prison inmate or convicted felon does not, by itself, establish indigence or even permanent indigence. *McGill,* 18 F.3d at 459. Without specific evidence or documentation beyond the mere fact of Plaintiff's age and felony convictions, therefore, the Court cannot conclude Plaintiff is unable to pay Defendants' costs indefinitely. *See, e.g., Lewis v. City of Chicago*, 2012 WL 6720411, at *3 (N.D. Ill. 2012)*; Bonds v. Fizer*, 69 F. Supp. 3d 799, 809 (N.D. Ill. 2014)*; Alek v. University of Chicago Hospitals,* 2002 WL 1880706, at *1 (N.D. Ill. 2002) ("the litigant claiming indigency must provide specific evidence establishing his or her indigency").

Because Plaintiff has not met his burden of proving he is unable to pay court-imposed costs now and in the future, the Court need not proceed to the second step of the *Rivera* inquiry and evaluate "the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case when using its discretion to deny costs." *Rivera,* 469 F.3d at 635. Nevertheless, the Court finds that the above factors weigh in favor of imposing costs on Plaintiff based on the current record. As discussed below, the costs to be assessed against Plaintiff are relatively low, comprising only $1,299.95 in costs for deposition transcripts. While the trial ultimately did turn on Plaintiff's credibility, the case itself was not close, nor were the issues raised particularly difficult to resolve. The jury did not believe Plaintiff and returned a quick verdict only a matter of hours after they retired to deliberate.

For these reasons, the Court finds Plaintiff has not met his burden of showing he is both indigent and incapable of paying Defendants' costs in the future. Even if he had done so, the second step of the analysis favors granting Defendants' Bill of Costs. The Court therefore awards Defendants' costs as discussed below. However, due to Plaintiff's incarceration at IDOC, from

which Plaintiff is expected to be paroled on December 8, 2020, the execution of the judgment on such costs will be stayed until June 8, 2021, six months after Plaintiff's anticipated release date. If Plaintiff's circumstances change before then, Defendants may move to lift the stay. *See, e.g.,* Lewis, 2012 WL 6720411, at *1. Similarly, if Plaintiff is not released when he anticipates he will be released, he can move to extend the stay until six months after he is released from IDOC.

## II. Deposition Transcripts

Plaintiff has not raised specific objections to Defendants' Bill of Costs itself. Nor have Defendants provided any explanation or support for their one-line assertion that their Bill of Const comprises "necessary expenses incurred in litigating the above-captioned matter." [ECF No. 236] at 3. However, the Court will nevertheless examine the costs claimed to determine whether they are reasonable and adequately supported. The Court "may not tax costs under Rule 54(d) unless a federal statute authorizes an award of those costs." *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.,* 481 F.3d 442, 447 (7th Cir. 2007) (citing *Cefalu v. Vill. of Elk Grove,* 211 F.3d 416, 427 (7th Cir. 2000) ("To be compensable…a particular expense must fall into one of the categories of costs statutorily authorized for reimbursement.")). The list of recoverable costs authorized under 28 U.S.C. § 1920(2) include "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Even if a cost is authorized by statute, however, it must still be "both reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi Motors N. Am.,* 514 F.3d 699, 702 (7th Cir. 2008).

Defendants' Bill of Costs is comprised of $2,575.43 paid for deposition transcripts of Fitzpatrick Allen, Joe Gambino, Michael Seropian, Carl Singletary, Edward Hopkins, and Plaintiff himself. [ECF No. 236] at 4-8. Defendants also obtained rough draft transcripts provided in real time for both trial dates, November 12 and 13, 2019. [ECF No. 236] at 9. The Court will first

evaluate whether the deposition transcripts, [ECF No. 236] at 5-8, were reasonable and necessary to the litigation before turning to the daily trial transcripts. [ECF No. 236] at 9.

Deposition transcripts for Fitzpatrick Allen, Joe Gambino, Michael Seropian, Carl Singletary, Edward Hopkins, and Plaintiff were necessary to Defendants' defense and preparation of their case. While "transcripts need not be absolutely indispensable in order to provide the basis of an award of costs," *Skanklin Corp. v. Am. Packaging Mach.,* Inc., 2006 WL 2054382, at *2 (N.D. Ill. 2006), the transcripts were an essential part of Defendants' preparation of this case, which turned almost exclusively on the credibility of witness testimony. Fitzpatrick Allen, Joe Gambino, Michael Seropian, Edward Hopkins, and Plaintiff in fact testified at trial. Both parties used the witness' prior deposition transcripts to cross-examine them while they were on the stand. Consistent with Federal Rule of Civil Procedure 32, Carl Singletary's deposition was also used in the place of his live testimony at trial, and Plaintiff's deposition was further used in support of Defendants' Motion for Summary Judgment [ECF No. 154]. The deposition transcripts and accompanying exhibits, therefore, certainly were necessary to the preparation and presentation of Defendants' case. Because the deposition transcripts meet or exceed the standard of "reasonably necessary" here, the Court will award Defendants reasonable costs for all six deposition transcripts.

Under Local Rule 54.1(b), "the costs of the transcript or deposition shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed unless some other rate was previously provided for by order of court." N.D. Ill. L.R. 54.1(b). At the time the transcripts were written in late 2017 and early 2018, the cost of ordinary transcripts was $3.65 per page. Transcript Rates, https://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo (last visited January 30, 2020). Defendants also request nominal costs for deposition exhibits for Joe

Gambino's and Michael Seropian's depositions, which courts have found are "recoverable if the exhibits were reasonable and necessary, in that they aid in understanding an issue in the case." *Nilssen v. Osram Sylvania, Inc.*, 2007 WL 257711, at *3 (N.D. Ill. 2007).

The deposition transcripts of Fitzpatrick Allen, Joe Gambino, Michael Seropian, Carl Singletary, and Edward Hopkins were billed at an acceptable rate of $3.20 per page. Costs for those depositions, including the cost of exhibits, will therefore be awarded in the full amount of $878.60. The extra fees Defendants incurred to upgrade the format of the above transcripts to a "GoGreenScripts" package, however, will not be awarded as costs. [ECF No. 236] at 6-8. In the Court's view, this additional cost of $35 per transcript was incurred merely for Defendants' convenience and was not necessary to the litigation.

There are, however, two issues regarding the costs requested for Plaintiff's deposition transcript. First, the invoice shows that the deposition was billed at a rate of $4.02, which is in excess of the $3.65 per page regular copy rate established by the Judicial Conference of the United States. [ECF No. 236] at 8. Consistent with Local Rule 54.1(b), the Court only will allow Defendants to recover costs in the amount of $361.35, which was calculated based on a rate of $3.65 per page for the 99-page deposition. *See, e.g., Alek,* 2002 WL 1880706, at *2. Second, Defendants seek $105 in court reporter attendance fees for Plaintiff's deposition, which lasted one hour. [ECF No. 236] at 8. Although a prevailing party may be awarded "deposition attendance fees charged by the court reporter" in the exercise of the district court's discretion pursuant to 28 U.S.C. § 1920(2), *Held v. Held*, 137 F.3d 998, 1002 (7th Cir.1998), court reporter attendance fees must be reasonable. "Hourly fees in excess of $60.00 are ordinarily unreasonable." *Dishman v. Cleary*, 279 F.R.D. 460, 468 (N.D. Ill. 2012) (citing *Askew v. Quinn III*, 2006 WL 1005167, at *1

(N.D. Ill. 2006)). The Court will therefore reduce the attendance fee to $60, bringing the total cost recoverable for Plaintiff's deposition to $421.35.

In total, the Court assesses $1,299.95 in costs for the deposition transcripts of Fitzpatrick Allen, Joe Gambino, Michael Seropian, Carl Singletary, Edward Hopkins, and Plaintiff, as these deposition costs were both reasonable and necessary to this litigation.

### III. Trial Transcripts

Defendants further ask the Court to order $1,088.85 in court transcript fees for rough draft transcripts of the trial proceedings. [ECF No. 236] at 9. While the cost of trial transcripts is recoverable, "courts may not tax the costs of transcripts…provided merely for the convenience of the requesting attorney." *Barber*, 7 F.3d at 645. Costs associated with daily trial transcripts may generally only be recovered where a trial is lengthy and complex, not where a case is short and simple. *See, e.g., Rawal v. United Air Lines, Inc.,* 2012 WL 581146, at *2 (N.D. Ill. 2012) (sustaining objections to the costs of daily transcript fees for a trial that lasted less than three days because trial was short, the issues were not complex, and daily trial transcripts were only a matter of convenience); *Serwatka v. City of Chicago,* 2011 WL 2038725, at *3 (N.D. Ill. 2011) (denying award of costs of daily transcripts where trial was short, straightforward, and relatively simple). In deciding whether to tax the cost of daily trial transcripts, courts also consider "whether a daily transcript was necessary to minimize disagreement over the testimony of witnesses," "whether proposed findings of fact were required," "whether the case involved expert witnesses whose cross-examination required knowledge of the exact wording of their previous testimony or that of any other witness," "the size of the claim," "and the importance of witness credibility." *Ernst v. Anderson*, 2006 WL 163024, at *2 (N.D. Ill. 2006) (citing *Independence Tube Corp. v. Copperweld Corp.,* 543 F. Supp. 706, 719 (N.D. Ill. 1982)).

As stated above, neither Defendants nor Plaintiff make any argument as to the reasonableness of the cost of daily trial transcripts – or any costs, for that matter. In the Court's view, having presided over the trial, this case was the epitome of "short, straightforward, and relatively simple" such that assessing the cost of daily trial transcripts against Plaintiff is not appropriate. *Serwatka,* 2011 WL 2038725, at *3. Here, a daily transcript was not necessary to minimize disagreement over the testimony of witnesses, no proposed findings of fact were required, and no expert witnesses were involved. *Lewis*, 2012 WL 6720411, at *8. While witness credibility was a central issue in this case, especially as it pertained to Plaintiff's own testimony, Plaintiff began and concluded his testimony on the first day of trial, meaning the transcript of his direct examination would not have been available to Defendants at the time of his cross examination. Similarly, Fitzpatrick Allen, Joe Gambino, Michael Seropian, and Edward Hopkins began and concluded their testimony on the second day of trial, rendering the transcripts of their testimony equally unhelpful. There were also no post-trial motions for which trial transcripts were necessary. In light of these factors and circumstances, the Court finds, in its discretion, that Defendants requested daily trial transcripts more as a convenience to aid in the preparation of their closing arguments rather than as a necessity for trial. *See, e.g., Perry v. U.S. Dep't of Energy,* 2008 WL 161679, at *3 (N.D. Ill. 2008). The Court therefore declines to award Defendants $1,088.85 in daily court transcript fees. While the Court is not criticizing Defendants for ordering daily transcript, the cost of those transcripts is not reimbursable for the reasons discussed above.

IV. **Conclusion**

For the reasons discussed above, the Court assesses $1,299.95 in costs comprising only the deposition transcripts of Fitzpatrick Allen, Joe Gambino, Michael Seropian, Carl Singletary, Edward Hopkins, and Plaintiff, as these deposition costs were both reasonable and necessary to

this litigation. Due to Plaintiff's incarceration at IDOC, from which Plaintiff is expected to be paroled on December 8, 2020, the execution of the judgment on such costs will be stayed until June 8, 2021.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 4, 2020